FILED
2010 Apr-26 PM 01:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| CATHY V. BRITT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 09-G-0747-NE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION**

The plaintiff, Cathy V. Britt, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

   (1)   whether the claimant is currently employed;

   (2)   whether she has a severe impairment;

   (3)   whether her impairment meets or equals one listed by the Secretary;

   (4)   whether the claimant can perform her past work; and

> (5)   whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

In the instant case,  ALJ Randall C. Stout determined the plaintiff met the first two tests, but concluded that while she has an impairment or combination of impairments considered "severe," she did not suffer from a listed impairment.  In his decision, the ALJ found that the plaintiff has the residual functional capacity to perform a less than full range of light work.  [R. 26].  Accordingly, the ALJ found the Plaintiff not to be disabled.

## THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted:  "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim."  Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988).  "The testimony of a treating physician must ordinarily be

given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, she must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## FIBROMYALGIA

Fibromyalgia presents unique problems in the context of Social Security cases. These problems have been recognized by the courts. In Sarchet v. Chater, 78 F.3d 305 (7th Cir. 1996), Chief Judge Posner examined fibromyalgia in detail:

> [F]ibromyalgia, also known as fibrositis—a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features. See Frederick Wolfe et al., "The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia: Report of the Multicenter Criteria Committee," 33 Arthritis & Rheumatism 160 (1990); Lawrence M. Tierney, Jr., Stephen J. McPhee & Maxine A. Papadakis, Current Medical Diagnosis & Treatment 1995 708-09 (1995). Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch. There is no serious doubt that Sarchet [the plaintiff] is afflicted with the disease but it is difficult to determine the severity of her condition because of the unavailability of objective clinical tests. Some people may have such a severe case of fibromyalgia as to be totally disabled from working, Michael Doherty & Adrian Jones, "Fibromyalgia Syndrome (ABC of Rheumatology)," 310 British Med.J. 386 (1995); Preston v. Secretary of Health & Human Services, 854 F.2d 815, 818 (6th Cir.1988) (per curiam), but most do not and the question is whether Sarchet is one of the minority.

78 F.3d at 306-307. Other courts have also recognized that fibromyalgia can be disabling. Kelly v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998)("Fibromyalgia, which is pain in the

6

fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues, can be disabling.").

In spite of its elusive nature, the presence of fibromyalgia can be objectively verified in some cases. As noted in Sarchet, there are tender areas, or "trigger points," which are well defined and cause pain upon palpation. Objective, clinical support for a diagnosis of fibromyalgia may also be present if injections of pain medication to the trigger points are prescribed. Kelly at 589 (diagnosis of fibromyalgia is clinically supported by trigger point injections). Clearly, then, fibromyalgia if properly diagnosed satisfies the pain standard.

## DISCUSSION

The plaintiff was 52 years old at the time of the ALJ hearing. [R. 30]. In his decision, the ALJ found that the plaintiff suffered from the severe impairments of "history of fibromyalgia with complaints of generalized pain from her head to her toes, anxiety, and depression . . . ." [R. 23]. However, he found that the plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. . . ." [R. 26].

The record contains treatment notes from Michael Douglas Dick, M.D., who examined the plaintiff on July 29, 1999. [R. 236-237]. Dr. Dick stated that he agreed with the plaintiff's prior treating physician Dr. Shergy that the plaintiff suffered from fibromyalgia syndrome, as he elicited 13 of 18 trigger points on examination. [R. 236]. Dr. Dick prescribed Etodolac and Tramadol for pain. [R. 237]. The plaintiff

continued to see Dr. Dick for treatment through July 2003, which included sleep and pain medications and trigger point injections. [R. 209-233]. On May 28, 2002, the plaintiff called Dr. Dick's office with complaints of severe depression and suicidal thoughts. [R. 223]. A November 22, 2002, progress note indicates an employment agency stated that the plaintiff could not keep her job because of emotional problems. [R. 219]. Dr. Dick declined to further assess the plaintiff's mental state, as he had not seen her since June 5, 2002. [Id.]. On May 16, 2003, Dr. Dick referred the plaintiff to Dr. John Hayes for treatment of schizophrenia, but Dr. Hayes would not accept the plaintiff's insurance. [R. 217]. Dr. Dick continued to treat the plaintiff for her symptoms, including schizophrenia, but the plaintiff was unable to pay for psychiatric care. [R. 209-216].

In January and February of 2004, the plaintiff was treated at the Southern Rural Health Care Consortium for pain and insomnia. [R. 239-240]. Diagnoses included fibromyalgia and mood disorder. [Id.]. From April 2004 through March 2006, the plaintiff was treated at the Community Free Clinic of Decatur. [R. 242-285]. An April 1, 2004, treatment note indicated that she was "extremely tender everywhere," and diagnoses included fibromyalgia, asthma, allergic rhinitis, GERD, and celiac disease. [R. 261]. Throughout her visits at the free clinic, the plaintiff's constant complaint was pain.

The plaintiff sought treatment from Greg Cheatham, M.D., from May 2006 to July 2006. Dr. Cheatham diagnosed fibromyalgia with multiple tender and tense muscle groups, and stated that she "[n]eeds to have a complete psych eval to help with

fibromyalgia vs. chronic pain.".  [R. 332].  After six treatment visits, Dr. Cheatham wrote a letter of medical necessity, which stated:

> Your client, Cathy Britt has (continues to have) a medical necessity for disability.  She is not currently working due to her chronic medical problems.  The patient's diagnoses are asthma, fibromyalgia, and chronic pain.  I would expect this necessity to continue indefinately [sic].

[R. 333].

On December 7, 2006, the plaintiff followed up with Edwin Matthews, M.D., of the Southern Rural Health Care Consortium.  She complained of fibromyalgia-related pain, and requested refills of her prescriptions, as she had run out of samples after three months.  [R. 325].  Dr. Matthews noted that the plaintiff was using a walking cane. [Id.].  On January 29, 2007, the plaintiff still complained of lower back pain and aching legs.  [R. 324].  On March 27, 2007, Dr. Matthews again diagnosed chronic low back pain related to her fibromyalgia.  [R. 323].  By May 2, 2007, the plaintiff was complaining of shooting pains in both legs.  [R. 322].  She continued to be treated by Dr. Matthews through October 7, 2007.  [R. 321-322].  On October 23, 2007, Dr. Matthews completed a Physical Capacities Evaluation, where he limited the plaintiff to carrying 10 pounds occasionally or less, and opined the plaintiff could sit for two hours and stand or walk for two hours in an eight-hour workday.  [R. 315].  Dr. Matthews also said that the plaintiff would have pain to such an extent as to be distracting to adequate performance of daily activities or work.  [R. 316].  Physical activity would result in greatly increased

pain. [Id.]. Drug side effects would be severe. [R. 317]. He also said that the plaintiff has an underlying medical condition consistent with the pain she experiences. [Id.]

The plaintiff was also seen by Marlin D. Gill, M.D., at the behest of the Commissioner for a April 18, 2006, consultative physical examination. [R. 286-288]. Dr. Gill noted:

> Gait is normal. She walks unassisted and is using no device today. Upper extremities appear normal and symmetrical. She uses the hands and arms normally with no real limitations and demonstrates full range of motion in the joints. They are neurovascularly intact. Muscle strength is 4/5 bilaterally. Grip strength 4/4 bilaterally. The neck appears normal. <u>She complains of tenderness to light fingertip touch anywhere over the posterior neck and complains of pain with neck movement.</u> She will flex to 10 degrees, extend to 10 degrees, and rotate 30 degrees bilaterally. The back appears normal. <u>She complains of tenderness to light fingertip touch anywhere over the thoracic or lumbar back and complains of pain with any back movement.</u> From the standing position, she will bend forward to 50 degrees and come back up erect again. Legs appear normal and symmetrical with good muscle tone. From the supine position, she will lift them off the exam table with no difficulty and strength is 4/5 bilaterally. Knees appear normal. There is no swelling or joint effusion. <u>She does have some crepitus with knee movement.</u> She will flex her hips to 90 degrees and extend to 0 bilaterally. She will flex her knees to 150 degrees and extend to 0 bilaterally. <u>From the standing position, she will not squat down stating it is too painful.</u> She can walk on her tiptoes and heels. Legs are otherwise neurovascularly intact and reflexes are 1+ and symmetrical.

[Id.](emphasis added). Dr. Gill's assessment was generalized pain with a history of fibromyalgia, and psychiatric problems with a history of depression and a reported history of schizophrenia and posttraumatic stress disorder. [R. 288].

The plaintiff also underwent a consultative psychological examination on April 20, 2006, by John R. Haney, Ph.D., a licensed psychologist. Dr. Haney noted:

Mrs. Britt was oriented to time, place, person and situation. She was unable to subtract serial sevens, but was able to count forward by threes. She had difficulty with other simple problems in change making and arithmetic. She was able to find similarities between paired objects and interpret simple proverbs. She gave some accurate general information and recalled five digits forward and two backward. She recalled zero of three objects after five minutes. Recent and remote memory appeared intact. Intelligence was estimated at the low average range.

No current psychotic symptoms were reported such as auditory or visual hallucinations, delusions or ideas of reference or grandiosity. However, the patient reported experiencing frequent "flashbacks," which she related were of physical and sexual abuse by her father and stepfather in early childhood, as early as four to six years old. Her records revealed a history of auditory and visual hallucinations and chronic self-mutilation which the patient did not report.

Mood appeared depressed, but conversation appeared logical and goal directed. She admitted feeling depressed most of her life, and complained of variable sleep and energy, but denied current suicidal thoughts. She admitted attempting suicide several times by taking large amounts of aspirin, attempting to choke herself and walking into traffic and being struck by a vehicle. Insight appeared poor, but the patient seemed able to manage her own funds, should any be awarded to her.

Mrs. Britt described an average day as waking around 10:00 or 11:30 in the morning. She mostly stays inside the house, does some cleaning, reading, word puzzles and cross-stitching. She denied other hobbies or activities. Mrs. Britt applied for disability due to feeling she is unable to work. She reported significant problems since an injury at work in 1998. She also reported being diagnosed with chronic fatigue syndrome, GERD, fibromyalgia, high cholesterol, osteoporosis and osteoarthritis, as well as Posttraumatic Stress Disorder, Social Phobia and Obsessive-Compulsive Disorder. Records revealed a diagnosis of Schizophrenia in progress notes from a primary physician. the patient apparently has also been treated at the mental health center in Morgan County, but no records were available. She reported she does not have resources for treatment and has been attending the free clinic for medical care. Mrs. Britt will probably require further medical assessment and treatment for her multiple physical problems. The patient also has significant anxiety and depression issues that need further assessment and ongoing treatment. She may be referred to the local mental

> health center. <u>The patient's ability to function in most jobs appeared severely impaired due to the patient's chronic physical and emotional limitations.</u> The patient's condition will probably remain unchanged in the next six to twelve months. <u>All of the patient's statements were regarded as truthful.</u>

[R. 289-290](emphasis added). Dr. Haney diagnosed Major Depressive Disorder, Recurrent, Moderate to Severe, Without Psychotic Features, Posttraumatic Stress Disorder, Chronic, Moderate to Severe, and Pain Disorder with both psychological and general medical factors. [R. 290].

The ALJ discounted Dr. Matthews's opinion, stating, "Even though Dr. Matthews is one of the claimant's treating physicians, his opinion appears to be based on the claimant's somatic complaints and is not consistent with the medical evidence as a whole." [R. 29]. This conclusion is not supported by substantial evidence. The ALJ stated:

> While the claimant saw Dr. Matthews twice in 2004 (once in January and once in February 2004), she did not return to see Dr. Matthews again until December 7, 2006, which was specifically a gap of over two years, which also indicates that the claimant's complaints of chronic pain are not as severe as alleged. When the claimant saw Dr. Matthews in December 2006, even though she reported feeling really bad due to allergies, asthma, and fibromyalgia-related pain, she admitted she had been out of her medications for several days (Exhibits 2F and 10F).

[R. 28]. The ALJ disregards that the plaintiff was being treated during that two-year gap at the Community Free Clinic of Decatur and by Dr. Cheatham. Additionally, treatment records from Dr. Matthews support his Physical Capacities Evaluation and Clinical

Assessment of Pain. In justifying his assignment of the plaintiff's residual functional capacity, the ALJ stated:

> Regarding the claimant's alleged physical impairments and her complaints of chronic pain, while she has received some treatment for her allegedly disabling symptoms, which would normally weigh somewhat in her favor, the record reveals that the treatment she has received has been essentially routine and conservative in nature and has been generally successful in controlling her symptoms and there is no objective evidence to establish she has any significant limitations.

[R. 28]. This reasoning is wholly unsupported by the record, which is replete with treating physicians noting multiple trigger points, chronic tenderness and depression. Because the ALJ failed to refute Dr. Matthews's testimony regarding the plaintiff's fibromyalgia-related pain, as a matter of law that testimony must be accepted as true.

Moreover, the activities of daily living as recited by the ALJ, and as testified to by the plaintiff, do not support a finding that the plaintiff's pain testimony is not true. The ability to perform the limited activities noted by the ALJ does not rule out the presence of disabling pain. The ability to watch television, do occasional shopping, or perform other sporadic activities does not mean the plaintiff is not disabled. In this circuit it has been recognized that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability. Lewis v. Callahan, 125 F.3d 1346, 1441 (11th Cir. 1997). As has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. Disability does not mean that a claimant must vegetate in a dark room

> excluded from all forms of human and social activity. . . . It is well established that sporadic or transitory activity does not disprove disability.

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added). It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances. In Easter v. Bowen, the court observed as follows:

> Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. See Yawitz v. Weinberger, 498 F.2d 956, 960 (8th Cir.1974). What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world. Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir.1987) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989). The Easter court further noted that "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance . . . ." 867 F.2d at 1130 (quoting Rhines v. Harris, 634 F.2d 1076, 1079 (8th Cir.1980)).

With this standard in mind, it is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence. Therefore, the ALJ failed to satisfy the requirements of Hale. The conclusion of that court is equally appropriate in the instant case. "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence. It follows, therefore, that claimant's pain testimony has been accepted as true." Hale, at 1012.

Under this circuit's pain standard, objective proof of the pain itself is not required. Moreover, the medical evidence also shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations. See SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements."). As Judge Allgood observed in Lamb v. Bowen: "[T]he record is replete with evidence of a medical condition that could reasonably be expected to produce the alleged pain. No examining physician ever questioned the existence of appellant's pain. They simply found themselves unable to cure the pain." 847 F.2d 698 (11th Cir. 1988).

Additionally, the ALJ gave consulting psychologist Dr. Haney's opinion little weight because it "was based on his finding all of the claimant's statements were truthful, which the undersigned does not. There is no objective evidence of any sexual abuse of the claimant by her father or stepfather in her early childhood as she alleged to warrant a diagnosis of post-traumatic stress disorder, and Dr. Haney's opinion is not consistent with the medical evidence as a whole." [R. 29]. The ALJ's reasoning makes it clear that he is substituting his own opinion for that of his own consulting psychologist. In cases involving mental illness, the opinions of mental health professionals are especially important.

The present case bears a resemblance to the situation in Wilder v. Chater, 64 F.3d 355 (7th Cir. 1995). In that case the court was faced with an ALJ who had improperly ignored the opinions of a consulting psychiatrist who was appointed by the Commissioner. The Wilder court observed:

> We are led to consider with a degree of suspicion the administrative law judge's decision to go against the only medical evidence in the case, that of a psychiatrist not retained by the applicant but appointed by the administrative law judge himself to advise on Wilder's condition. . . . The psychiatrist's testimony, though conclusional (but then no one pressed him to elaborate the grounds for his conclusions), was the only direct testimony concerning the critical issue of the date of onset of Wilder's disabling depression. Severe depression is not the blues. It is a mental illness; and health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it. The question what stage a physical or mental illness had probably reached some years before it was first diagnosed is a medical question, and the uncontradicted evidence of the only disinterested expert to opine upon it is entitled to considerable weight. We do not say conclusive weight; but the facts on which the administrative law judge relied to contradict that evidence are singly and together unimpressive.

Id. at 337 (emphasis added)(citations omitted).

An ALJ is not allowed to make medical findings or indulge in unfounded hunches about the claimant's medical condition or prospect for improvement. He is not free to base his decision on such unstated reasons or hunches. Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in Marbury v. Sullivan, as follows:

> An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians: "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir.

16

1988). . . . An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his *private or personal capacity*; however, as a hearing officer <u>he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional</u>.

Because the ALJ made no factual findings supporting an inference that the treating physicians were incompetent or otherwise failed to perform their duties in a professional manner, the ALJ's decision not to credit seriously the medical diagnoses indicating psychogenically caused seizures cannot stand. . . .

Although Social Security disability benefits must be reserved only for those who qualify to receive them, <u>an ALJ may not arrogate the power to act as both judge and physician</u>. The ALJ in this case clearly exceeded his legal authority by allowing his personal views regarding the non-physical source of Marbury's seizure disorder to interfere with his responsibilities to administer fairly the Social Security disability programs. On remand, let us hope that the ALJ refrains from playing doctor and instead satisfies himself with merely serving as a judge.

957 F.2d 837, 840-41 (11th Cir. 1992)(italics in original)(emphasis added).

In the present case, it is apparent that ALJ Stout has abused his discretion by substituting his own medical judgments for those of his own consulting psychologist. The ALJ cites to the evaluation by a non-examining medical consultant to support his rejection of the examining psychologist. [R. 29]. This reliance is improper in this Circuit:

The reports of reviewing nonexamining physicians do not constitute substantial evidence on which to base an administrative decision. <u>Spencer on Behalf of Spencer v. Heckler</u>, 765 F.2d 1090 (11th Cir.1985); <u>Strickland v. Harris</u>, 615 F.2d 1103 (5th Cir.1980). The good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a nonexamining physician where it contradicts the report of the treating physician. <u>Johns v. Bowen</u>, 821 F.2d 551 (11th Cir.1987). "The opinions of nonexamining, reviewing physicians, ... when contrary to those

of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir.1987).

Lamb v. Bowen 847 F.2d 698, 703 (11th Cir. 1988). In this case, as in Lamb, "the weight accorded the observations of the nonexamining physicians by the [ALJ] was inconsistent with the proper legal procedure." Id.

## CONCLUSION

The Vocational Expert testified that if the plaintiff were experiencing pain and discomfort at such a degree that she would miss two or more days of work on a monthly basis would preclude the ability to sustain any gainful activity. [R. 65]. Also, the VE stated that psychological and physical factors resulting in pain and discomfort which caused the plaintiff to be unable to concentrate for periods of up to two consecutive hours would preclude any work. [R. 66]. Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 26 April 2010.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.